Okay, our first case this morning is number 24-1499, WSOU Investments LLC v. Google LLC. Mr. Abraham. Thank you. Good morning, and may it please the Court. There are several key errors underlying the District Court's judgment below. It's both procedurally and substantively flawed. The procedural error arises from the District Court having taken up Google's claim interpretation arguments for the very first time on a Rule 50A motion following the close of WSOU Brazos' case-in-chief. After all the evidence was in. In terms of the substantive flaws, the District Court's order has three distinct flaws incorporated therein. First, there is the ruling that the asserted claim, the asserted method claim, these steps must be performed in the order of drafting. The second error relates to the District Court's premise that the claim must be interpreted from the perspective of the mobile handset user and cannot be viewed from the perspective of the service provider's servers. That's an implicit incorporation within the District Court's order in that the District Court expressly says it's just talking about order of steps, but it cannot be read without also taking into account that it's ignoring the server side view. And then the third error, substantive error, within the District Court's order relates to without any substantive analysis, just conclusorily deciding that the apparatus claim works exactly the same as the method claim and that the same order of steps should apply. Do you agree, counsel, that Google's non-infringement argument also hinges just on the plain language of the claims themselves? I don't know that I would completely agree with that, in that the presumption under law, under Alteris, is that the order of steps need not be performed in order. And so if you're going to depart from that presumption, that is a claim construction. We think that's what happened here. The District Court says that it was performing claim construction. Now, the first ---- So what case law do you have from the Federal Circuit to support the proposition that in this case the District Court judge abused his discretion by considering claim construction at the 58 time period? Like, under 02 micro, a District Court judge has an obligation to construe the claims. So once there's a dispute, that's apparent. So why ---- what case law says that a District Court judge ---- I mean, I understand the unfortunate circumstances of the, you know, the timing of the claim construction. But I don't think we've said that there's a particular time by which a District Court has to interpret claims as a matter of law. So I think I do agree with the premise of that question. But what I would say is that when you read the Kaufman and the pressure products decisions together, what that says is that whenever the District Court is making a claim construction determination at a late stage, it needs to be at the point when the party that is essentially adversely affected by the claim determination has the opportunity to incorporate those findings and present its case accordingly. Well, but I mean, the Cytologics case said the claim construction could even come later than it did here after the close of all the evidence, right? I think Cytologics involved the agreement of the parties to postpone claim construction all the way to the end. And that's just so very distinguishable here. And I actually would say that Cytologics should be read to say that there was concern, extreme concern expressed by the Court that doing it at that late date after all the evidence was in was problematic. We had notice of the contention, of Google's contention anyway. It was in the expert report. They said that it didn't infringe because it wasn't done in order, right? Well, they said a lot of things in that expert report. They did say that, right? It is in there. But again, never raised to the Court, and we never got the chance, because Dr. Welch never was called to testify, to object and say that he's delivering an opinion that does not comport with the Court's claim construction and he shouldn't be allowed to deliver that testimony. What was the Court's claim construction prior to that time? There was no construction as to the order. Then how did it not comport with the claim construction? Well, by say – okay. Because that's where we get back to the presumption. The presumption under Alturas and Interactive Gifts is that the steps of the method need not be performed in order. And there was nothing in the record that said that they had to be performed in order. Therefore, when Dr. Welch said it did, that is arguably a departure that requires a claim construction finding. And in the absence of that – Did you ever contemplate counsel asking for a claim construction that they do not need to be performed in a specific order? It was not – again, we contemplated it. It was never brought to the floor until we got to the Rule 50A stage following the close of evidence, following everything that we had put in. But you did just agree with Judge Dyke that at least you would have been aware, based off of the Google expert report, that that was one of the contentions. Again, expert reports contain lots of things and they do not necessarily all come in at trial. So could we have done that? Yes, we could have done that. But at the end of the day, the real flaw here is that it was not until after all of the evidence was in, in response to an unconstrued term in which we did not have any obligation to adopt Google's reading of the claim, until once we were committed, only then did Google decide that this was something that it was going to put in front of the Court and raise as a non-infringement argument. Until then, it was.  No, they didn't raise it. Even in the 50A motion, they didn't raise it as a claim construction issue, right? Well, I think the reason they didn't raise it as a claim construction issue is because they realized the potentially problematic nature of having done it so late in the case. They said expressly it was in claim construction, but then they just didn't. They raised it the same way they did in the expert report, that under plain and ordinary meaning, it had to be performed in order, right? I would say that is correct. But again, that was not in evidence up to that point. Let me, if you don't mind, I'd like to go to the substantive aspect here, which because the issue there is that we think the district court, again, is wrong in construing the claim that the method needs to be performed in order, both as a matter of plain language and as a matter of doing, if there is any ambiguity that the steps do not need to be performed in order, then the specification is very clear that it says that they can be performed in any order, and, you know, there's exemplary embodiments, but it's not a question of this is the one and only way to perform the method. The other issue is that, so that would be the strict order of steps issue, but then there's the user versus server issue, because Before you go to that user versus server issue, you agree, though, that steps 1A and 1B need to be performed in that specific order. We do. So it's just that you don't agree with the subsequent steps after B need to be in a certain order? So this is, I think, a good transition to the user versus server issue in that Global's conception seems to be that you look at this claim from the perspective of the mobile device user who has a daily routine and walks into a certain, you know, encounters a certain set of signal sources based on which stationary states and primary stationary states are determined, and in response to a background determination of the primary stationary states, services may be delivered. They think it just goes 1, 2, 3, 4, 5 based on the phone that you're carrying around in your pocket. The issue is that if you go to the server point of view, even if there is an order of steps required under the method, the proof was there was sufficient proof in the record, especially under the very demanding Rule 58, you know, no reasonable jury standard to say that Google itself does perform the method in order, because it's an iterative invention. It's the claim language itself specifically. Well, you conceded at the oral argument on the Rule 58 motion that if you looked at a single user, that there was no evidence that was performed in order, right? Specifically as to if you have to look at the claim from the perspective of the single user in a single transaction, yes, we did concede that. But again, we think that is a very overly narrow reading of what the invention actually claims. The invention very clearly contemplates server-based implementations, and the claim language speaks in terms of iterative behavior in that regard. What does that mean? Because the server involves multiple users, that some users are performing one step, other users are performing another step? Is that the theory? Our theory is Google is performing the steps. Is that the theory? The users aren't performing the steps. Google is performing the steps.  Google is performing the steps. If you consider multiple users, they might be performing Step 1 with respect to User A and Step 2 with respect to User B, right? That's the theory. That is part of the theory. The other part would be that even as to User A or B, Google performs the method over and over and over again as that user continues to move throughout the world and encounter signal sources and encounter different stationary states. Of course, that theory of infringement would have had to have been presented to the jury, right? So I think you've got testimony of Dr. Budhavari that you're primarily relying on for saying that even under the district court's construction, Google would infringe. Is that correct? You've got – is that what you're relying on? There's a couple of different things. We are certainly relying on Dr. Budhavari for evidence of infringement. That's what we have to look at to see whether there's substantial evidence, correct? Yes. We have to look at the evidence you've identified that was presented to the jury. And we would say that's in there. I don't think there's any question that that theory of the case was presented via Dr. Budhavari's testimony. Again, there's no – there's nothing in Dr. Budhavari's testimony that limits it to A. But I looked at Mr. Budhavari's testimony. I'm having a hard time seeing where there's a discussion of the sequence of order of the steps. So I'm just letting you know in case you want to walk through it. Sure. Again, that's because Dr. Budhavari's testimony goes to the iterative nature of the invention, which all these things happen. Multiple claim limitations speak to the plurality of different times. We speak to the frequently incremented count. And so I think necessarily by putting in evidence that goes to those claim limitations, it speaks to the fact that the invention, the infringing method is being performed by Google repeatedly. And it is that repetition that in turn causes the order of method steps to have been performed by Google. Can you answer Judge Stoll's question, though, and point us to specific testimony that you think would actually address the order of steps? Again, I would say because that was not an issue that had ever been highlighted, it was not something where he said specifically. But I — but — Okay. So there's no testimony to point us to on that front is what you would agree to, right? I would agree that there's no testimony where he expressly says A follows — B follows A, C follows B, because at the end of the day, A, we didn't need to, and B, he speaks to the iterative nature of the invention, and it is the — But even if there isn't something like that — I'm sorry? You should be able to piece it together for me here. Even if there isn't something that says step one, followed by step two, followed by step three, can you explain it to me? Like, through the testimony, how it is that I would understand that these steps were performed sequentially? It's a good question, Your Honor. And I think I would say it is inherent in the nature — just inherent in his testimony. We walked through these — through the method in essentially chronological order of steps, and there's nothing to say in the manner in which he delivered his testimony that it wasn't performed in order. Again, we rely on the iterative nature of the invention, as performed by Google, in order to establish —  I just thought that it would be helpful for you in this case if you could walk me through the testimony to support the things that you're saying right now. I agree. It would be very helpful. But again, that speaks to the nature of this issue having been raised in a essentially post-close of the case-in-chief point in time, because if it had been something that we thought was going to be an issue for the Court, then we certainly would have made sure that that was something more highlighted in Dr. Boies' report. And you didn't know it would be an issue from the experts' report. Again, experts say — I understand, but that seems to be a non-infringement theory that was set forth in your report. So I don't understand why you wouldn't think that was an important aspect.  And again, I don't want to belabor, but again, it's a non-infringement theory that we thought was inconsistent with the plain and ordinary meaning, and so we would have had the right to keep it out and have it never come in front of the jury. You could have — I suppose you could have asked when the Rule 58 motion was filed and the Court adopted a claim construction to be able to supplement your testimony, right? We certainly could have. But the Court entered — at that point, the Court had entered judgment of non-infringement based on the evidence that had gone in. And at that point, we — we could have asked for reconsideration, but we decided we would prefer to come up on appeal. So at this point, given where the clock is, I think I'm going to reserve the balance of my time. So thank you. Mr. Maragosi. Good morning, Your Honor. May it please the Court. The judgment of non-infringement should be affirmed on multiple independent grounds. First, the district court correctly held that WSOU's case was devoid of any evidence that Google performs the recited steps in the claim sequence. Second, the alternative grounds for affirmance in Google's response brief established that regardless of any sequential order, WSOU has a — Can you speak up? Could you speak up? Oh, I'm so sorry. I apologize, Your Honor. Second, the alternative grounds for affirmance in Google's response established that regardless of any sequential order, WSOU has a failure of proof on numerous limitations, including the current time requirements and steps B and C, and — I'm going to ask you to speak up again, Your Honor. Really? Okay. Yes, that's better. I apologize. That there's a failure of proof with respect to the steps C — with respect to the requirement for current time in steps C and B and the requirements for step D. Third, WSOU's brief, reply brief, concedes that step E must occur after step A and B. This also supports an affirmance because W — this concession shows that WSOU was aware that there was a sequential — at least some sequential order required in the claims under which WSOU failed to provide any proof. WSOU's expert, Dr. Budhavar, never explained, never detailed, never showed how Google performed step E after steps A and B. WSOU's expert also failed to show that the location history, which WSOU relies on as the signal data in steps A and B, has any relation to the delivered services in step E. And this speaks to the questions earlier. We asked WSOU's expert, you didn't show the jury any evidence that their location history leads to any ads. And the answer was, quote, I didn't. That's at Appendix 14517. This failure of proof is also true for the other services identified by WSOU. And two more points, Your Honor. Kagan. Before you go to those two other points, what is your direct response to opposing counsel's argument that there was a construction in terms of this order of steps that happened at the 58 stage and that that was essentially, I think, they're arguing too late? Your Honor, it was not too late. And a couple of points there. First, as the district court noted at Appendix 11 and as this court pointed out, WSOU was fully aware and had full notice of Google's position that infringement requires performing the recited steps in sequential order. Dr. Welch's report explained this repeatedly and in detail. And the citations for that, the citations they report are at Red Brief 2, 8, and 41. So WSOU had full notice. They were fully aware of Google's position. And, in fact, today or in their briefing, even now, WSOU admits that there are certain sequential steps that are required by the claims. So, Your Honor, we heard something about the perspective from the server or the client. Regardless of perspective and regardless of sequencing, WSOU's expert also failed to show that the recited mobile device in Step E that receives or to which a service is delivered is the same device that's recited in Step A and Step B. There again is a failure of proof. The most that WSOU's expert could say was that the devices could be the same and that there may be many mobile devices. That's Appendix 1, 4, 5, 4, 7. And one last point, Your Honors. This aggregate theory or iteration theory, that was – that's pure attorney argument. It was never raised in any evidentiary form to the jury. It was not presented to the jury. And we – Was it in an expert report? It's unclear. I don't – it may have been, but it was not presented to the jury. It's not evidence that was in the record. But we did ask – I'm sorry. Okay. We did ask their expert whether, on cross, after he said he provided all his opinions, whether he showed that the recited Steps are connected together in Google's products. And his answer was, I didn't do a complete analysis, Appendix 1, 4, 5, 2L. I'm sorry, Your Honor. That's all right. What I was going to ask was, when did it become apparent that there was a dispute between the parties as to the plain meaning of the claim language, specifically whether some of the Steps had to be performed in a certain sequence? So let me answer it temporally. When we got – when Google received WSU's infringement report, it was unclear what infringement theory – whether the infringement theory required performing the Steps in sequence or not. We submitted a rebuttal report. It was not clear to us that they would rely on an infringement theory where the Steps did not need to be performed in order until their case in chief, where they did not – they failed to show any sequence of Steps performed by Google. So if there's no further questions, Your Honor, I will get back to court. It's time.  Thank you, Your Honor. Mr. Abraham. I'll be as brief as I can in responding to those many points. We'll go in reverse order. In terms of the many users over time, it's clearly contemplated by the patent. It's in the – we cite that at the blue brief, pages 13 to 15, citing column 19, a reasonable number of servers can service a large number of location context users. Those are the handsets. In terms of the aggregation iteration theory not being cleanly presented again until after the close of evidence was in and it became clear that someone cared about the order of Steps enough to raise it to the court, that was not something that we needed to put in expressly under what we understood the claim language to mean. At that point, yes, we started – we then presented it. But as far as we're concerned, there's enough there in Dr. Budvar's testimony to support it. Again, the issue of the A versus the antecedent basis argument that Google raises, that again ties in with the aggregation iteration theory. The point is that all of the these refer back to the one or more handsets with respect to which Google performs the claim over and over and over again. Other than that, Google's counsel highlights the fact that the district court says we were on notice. The district court had no way of noting that. There is no citation in the district court's order. And that's because it was only in an expert report that the district court never saw. There was never any presentation of Google's theory of non-infringement based on the order of the Steps until the Rule 50A motion. That's the first time the Court knew about it, the first time we thought the Court knew enough to care about it. Okay. Thank you, Mr. Adler. All right. Thank you. I thank both counsel in case you so much.